**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| I.B.T., LOCAL 560 (on behalf of Kriss Holland), | Civil Action No.: 11-4529 (JLL) |
| Petitioner, | |
| v. | **OPINION** |
| SERVICE CONCRETE, CO., | |
| Respondent. | |

**LINARES**, District Judge.

This matter comes before the Court by way of Petitioner I.B.T., Local 560's Motion to Confirm the Arbitration Award entered by Arbitrator Matthew M. Franckiewicz ("Arbitrator") on May 27, 2011 [Docket Entry No. 2] and by way of Cross-Motion by Respondent Service Concrete, Co. ("Respondent" or "Service Concrete") to Vacate all Arbitration Awards issued by the Arbitrator on June 15, 2010, March 11, 2011, and May 27, 2011 [Docket Entry No. 3]. The Court has considered the parties' submissions. Pursuant to Fed. R. Civ. P. 78 no oral argument was heard. For the reasons that follow, Petitioner's Motion to Confirm the May 27, 2011 Arbitration Award is GRANTED, and Respondent's motions to vacate are DENIED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 17, 2009, a Collective Bargaining Agreement ("CBA") between Service Concrete, Co. and Teamsters Local Union 408 became effective. The CBA included an arbitration provision allowing the submission of disputes between the Employer and the

employees, or the Employer and the Union to arbitration before a permanent arbitrator (CBA, Section 27 at 14-16). On May 7, 2009, Grievant Kriss Holland was discharged from his employment with Respondent Service Concrete following a collision in the Respondent's yard. On June 8, 2009, Petitioner International Brotherhood of the Teamsters, Local 560 ("Petitioner" or "I.B.T., Local 560") filed a grievance on behalf of Kriss Holland based on Grievant's termination. On that same day, Petitioner requested arbitration by sending notice to the New Jersey State Board of Mediation.

Arbitration hearings were held at the New Jersey State Board of Mediation before Arbitrator Matthew M. Franckiewicz on March 31, 2010 and April 27, 2010. The Arbitrator framed the issues before the Board as follows: (1) whether the grievance was untimely, and thus procedurally inarbitrable, under either Sections 27(a) or 27(f) of the CBA; (2) whether the grievance was substantively inarbitrable on the basis that the Grievant was a probationary employee with no recourse to the grievance procedure under Section 23 of the CBA; and (3) whether there was "just cause" for the discharge of the Grievant and, if not, what the remedy should be. At the arbitration hearings, both parties were allowed to present witnesses, documentary evidence and post-hearing briefs. Arbitrator Franckiewicz also received testimony and documentary evidence and made various evidentiary rulings before issuing an interim Opinion and Award on June 15, 2010. In said award, the Arbitrator found the following: (1) the grievance was procedurally arbitrable because it was timely under Sections 27(a) and 27(f) of the CBA; (2) the grievance was substantively arbitrable because Grievant Holland was not a probationary employee as defined under Section 23 of the CBA; and (3) there was not just cause for the Grievant's discharge. Based on these findings, Arbitrator Franckiewicz issued an Award

2

reversing Grievant's discharge, imposing a four-week suspension on the Grievant, and ordering Respondent to both reinstate him and make him whole for economic losses suffered, except for the four-week suspension. The Arbitrator retained jurisdiction for the limited purpose of resolving any disputes that arose in connection with the ordered remedy as set forth in his June 15, 2010 Opinion and Award.

The parties were unsuccessful in reaching an agreement regarding the damages owed to the Grievant, which necessitated a supplemental hearing on damages. Said hearing was conducted by Arbitrator Franckiewicz on December 6, 2010 at the New Jersey State Board of Mediation. Both parties appeared and presented testimony and exhibits as well as post-hearing briefs. Subsequent to said hearing, Arbitrator Franckiewicz issued a Supplemental Opinion and Award on March 1, 2011. The award provided that Respondent shall make Grievant Holland whole by paying him back pay calculated in accordance with the Arbitrator's Supplemental Opinion and Award. The Arbitrator retained jurisdiction for the limited purpose of resolving any disputes that arose in connection with the implementation of the remedy ordered.

The parties thereafter executed a Stipulation regarding Damages on May 26, 2011, which set forth the applicable pay period, the amount of wages owed to the Grievant, the amount of out-of-pocket expenses owed to the Grievant, and the benefit contributions owed to the Annuity Fund of Teamsters Local Union 560 on behalf of the Grievant. On May 27, 2011, Arbitrator Franckiewicz issued a Final Award in accordance with the parties' Stipulation of Damages, which consisted in $16,318.31 for back pay, $1,987.64 for out-of-pocket medical expenses, and the remittance of $871.01 to the Annuity Fund.

On August 4, 2011, Petitioner filed the instant Motion to Confirm the Arbitration Award.

On August 22, 2011, Respondent filed his opposition to Petitioner's motion as well as a Cross-Motion to Vacate all Arbitration Awards entered by Arbitrator Franckiewicz.

## II. LEGAL STANDARD

A court's review of an arbitration award is very deferential, and "[a]s long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." E. Coast Distribs. v. Local 863, Int'l Bhd. of Teamsters, 2011 U.S. App. LEXIS 7476 (3d Cir. April 11, 2011)(citing United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36 (1987)(quotation omitted)). With respect to procedural arbitrability, the Supreme Court has held that "procedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide" since these are the types of questions that parties would "likely expect" to be entrusted to an arbitrator for resolution. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557-58 (1964); Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207 (3d Cir. 2007). An arbitration award will be set aside on procedural grounds only when the arbitrator's error is in bad faith or "so gross as to amount to affirmative misconduct." United Paperworkers, 484 U.S. at 41. "Even in the very rare instances when an arbitrator's procedural aberrations rise to the level of affirmative misconduct, as a rule the court must not foreclose further proceedings by settling the merits according to its own judgment of the appropriate result, since this step would improperly substitute a judicial determination for the arbitrator's decision that the parties bargained for in the collective bargaining agreement." Id.

Further, the substance of arbitration awards are entitled to a strong presumption of

correctness, which can only be overcome in extremely narrow circumstances. Respondent bears

the burden of proving that the arbitration award at issue should be vacated. Handley v. Chase

Bank, 387 Fed. Appx. 166, 168 (3d Cir. 2010) (citing Dluhos v. Strasberg, 321 F.3d 365, 370 (3d

Cir. 2003)) ("The party seeking to overturn an award bears a heavy burden as these are

'exceedingly narrow circumstances.'"). This Court may not vacate an arbitration award merely

because it views the merits of the claims differently or because the Court feels that the arbitrator

made a factual or legal error. See e.g., Major League Umpires Ass'n v. American League of

Professional Baseball Clubs, 357 F.3d 272, 279 (3d Cir. 2004). Neither can the Court overrule

an arbitrator's decision based on proffering its own interpretation of the relevant contract over

that interpretation of the arbitrator. W.R. Grace v. Local Union 4759, Int'l Union of Rubber,

Cork, Linoleum and Plastic Workers of America, 461 U.S. 757, 764 (1983).

Section 10(a) of the Federal Arbitration Act ("FAA") provides that a Court may vacate an

arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrator;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. The Third Circuit has also recognized certain common law grounds for vacating

an arbitration award. First, vacating an award is justified where an arbitrator has ignored the plain

language of the contract or if the arbitrator's decision is unsupported by principles of contract

construction. Exxon Shipping Co. v. Exxon Seamen's Union, 801 F. Supp. 1379, 1384 (3d Cir.

1992)(citing News Am. Publications, Inc., 918 F.2d 21 at 41-42 (3d Cir. 1990)). Second, an

arbitrator's manifest disregard for the law is sufficient to vacate an arbitration award. See <u>e.g.,</u> <u>Tanoma Min. Co., Inc. v. Local Union 1269, United Mine Workers of America,</u>, 896 F.2d 745, 749 (3d Cir. 1990).[1]  Manifest disregard for the law involves something more than a legal error — the arbitrator must have been "'fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it.'" <u>Westa Constr., Inc. v,. United States Fid.</u> <u>& Guar Co.</u>, 2007 WL 1031438 at *2 (M.D. Pa. Mar. 29, 2007)(quoting <u>Black Box Corp. v.</u> <u>Markham</u>, 2005 WL 546649 at *2 (3d Cir. Mar. 29, 2005)).  Also, an arbitrator's decision must be "totally unsupported by the principles of contract construction and the law" to constitute "manifest disregard." <u>News Am. Publications, Inc.</u>, 918 F.2d at 24.

### III.  DISCUSSION

In its Motion to Vacate the Arbitration Awards, Respondent cites to FAA §§ 10(a)(3) and 10(a)(4), arguing that vacatur is warranted due to Arbitrator Franckiewicz's misconduct and rulings in excess of his powers.  Respondent also relies on Third Circuit precedent regarding manifest disregard of law doctrine as a ground to vacate the Arbitrator's Awards.  Specifically, Respondent claims that the Arbitrator demonstrated a manifest disregard of the law in his construction of the CBA in two respects: (1) finding the grievance procedurally arbitrable by finding it timely under Sections 27(a) and (f) of the CBA; and (2) finding the grievance substantively arbitrable on the grounds that Grievant Holland was not a probationary employee

---

[1]The court notes Petitioner's citation to <u>Hall Street Associates v. Matel</u>, 128 S.Ct. 1396, 1405 (2008), in which the Supreme Court casts doubt on the validity of the manifest disregard of law doctrine. That Supreme Court decision has generated divergent views amongst the circuit courts with respect to whether this doctrine can serve as a ground for vacatur under Section 10 of the FAA. However, the Third Circuit has not yet altered its position that the manifest disregard of law constitutes a lawful ground to vacate an arbitration award. See <u>Andorra Servs. v. Venfleet,</u> <u>Ltd.</u>, 355 Fed Appx. 622, 627 (3d Cir. 2009).

under Section 23 of the CBA.  On the first issue, Respondent asserts that the notice requirements contained in Sections 27(a) and (f) of the CBA govern the filing of grievances, and since (1) the dispute was not submitted to arbitration within ten days after the request of either party; and (2) Grievant Holland did not notify the Union in writing within two days of his desire to appeal the discharge, the Grievance was untimely and procedurally inarbitrable.  By construing the CBA to find that the Grievance was timely, Respondent claims, the Arbitrator ignored the notice requirements in the CBA, improperly altering its plain meaning.  On the second issue, Respondent argues that the 90-day period from which the probationary period runs under Section 23 of the CBA was unambiguously February 17, 2009, and that running that period from when an employee was hired rather than from the effective date of the CBA constituted arbitrator misconduct by reading additional terms into that section in contradiction to its plain language.

Respondent thus claims that Arbitrator Franckiewicz's June 15, 2010 Opinion and Award did not draw its essence from the CBA, ignoring the plain language of its provisions by improperly inserting additional language in the agreement in direct contradiction to basic principles of contract construction.  (Resp't's Cross-Mot. to Vacate at 17).  The addition of language to the agreement, Respondent argues, violated Section 27(a), which provides that the "arbitrator shall be bound by this agreement and shall have no power to alter, amend, modify, add anything to or take anything away from its provisions."  Respondent asserts that the Arbitrator's disregard of established legal principles constituted misconduct as defined under FAA § 10(a)(3) and exceeded his powers as arbitrator in violation of FAA § 10(a)(4).  Therefore, it is Respondent's position that since the June 15, 2010 Award underlies the subsequent Supplemental Opinion and Award as well as the Final Award, all the Awards should be vacated.

Before addressing the specificity of Respondent's claim, this Court notes that the manifest disregard of law doctrine is a distinct ground for vacating arbitration awards than those listed under FAA §§ 10(a)(3) and 10(a)(4). First, under § 10(a)(3) of the FAA, an arbitration award can be vacated "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." Respondent does not claim that Arbitrator Franckiewicz engaged in misconduct with regard to the hearing process nor do they challenge his evidentiary rulings. Second, under § 10(a)(4) of the FAA, an arbitration award can be vacated "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." Respondent does not contest that the Arbitrator did not succeed in making a mutual, final and definite award upon the subject matter submitted. Rather, Respondent claims that it is because the Arbitration Awards were definite and final that Respondent now moves to vacate them. However, the basis upon which it moves to vacate the award is most accurately grounded in Third Circuit law, namely the manifest disregard of law doctrine.

### a. Procedural Arbitrability of the Grievance

Whether the Grievance was procedurally arbitrable turned on whether Grievant Holland's Grievance was timely under Sections 27(a) and 27(f) of the CBA.

### 1. Timeliness under Section 27(a)

Section 27(a) of the CBA provides:

> Should any dispute arise between the Employer and the employees, or the Employer and the Union, concerning the application and interpretation of any provision of this contract, or concerning any term or condition of employment, or otherwise, the representatives of the Union and the representatives of the Employer **shall** attempt to adjust the controversy between them. In the event they are unable to adjust the same, the dispute **may** within ten (10) days after the request of either party be submitted to arbitration before a permanent arbitrator, to be designated by mutual agreement of the parties to this agreement. (emphasis added)

In finding that the Grievance was timely with respect to this Section, Arbitrator Franckiewicz made three points in his June 15, 2010 Opinion. First, he noted the distinction made in the provision between mandatory and permissive requirements for the parties to proceed to arbitration. While the language of the provision makes it mandatory that the parties attempt to adjust controversies between them, it is at the parties discretion to proceed to arbitration should either one or both of the parties so decide: "If that attempted resolution fails, the permissive word 'may' applies. No doubt the parties did not intend that every unresolved dispute must proceed to arbitration." (June 15, 2010 Arbitration Opinion at 12). Second, the Arbitrator noted that the starting period from which the parties must submit the controversy to arbitration in order to be timely is "within ten days after the request of either party," and that the "only reference point mentioned in Section 27(a) for calculating the 10 day period is the inability to resolve the dispute, and there is no deadline for when the settlement discussions must be concluded." (Id. at 12-13). Based on the expertise of the Arbitrator, this "absence of any provision comparable to the one included in most collective bargaining agreements that a grievance of some sort must be filed or presented in some manner within a set number of days of the underlying event" is of great significance precisely because it does not mandate with any specificity that the grievance must be filed within ten days of a discharge. While Respondent would have that event specified as the moment the Union "reach[ed] an impasse on settling the dispute with the Company,"

9

Respondent neither offers an exact date when this occurred nor resolves the flexibility inherent in the ambiguous contractual phrasing, "In the event they are unable to do adjust the [controversy] . . . ." as the moment from which a statute of limitations period runs. (Resp't's Reply Br. at 4). Which leads to the Arbitrator's final point, that construing the contract based on the plain meaning of the final sentence of the provision, "it is clear that the 10 day period begins to run when the request to arbitrate is made [within ten (10) days after the request]." (June 15, 2010 Arbitration Opinion at 12). Since the Arbitrator found that the grievance dated June 8, 2009 is the Union's "request," and that the Union also notified the New Jersey State Board of Mediation of its submission of the dispute to arbitration on June 8, 2009, "the Union complied with the only time limit stated in Section 27(a)." (Id.). Even if the date were to be set from "an impasse in settlement negotiations," the Arbitrator could only find the date of June 3, 2009 appropriate, since that was the date that Bill Knorr, the General Manager of Service Concrete, sent a written statement of the Company's reasons for discharging Holland after being requested to do so by the Union. Since it could have only been after receipt of that letter that the Union could have found the Employer's reasons insufficient, an impasse could not have been reached before June 3.

In reviewing the Arbitrator's analysis of the procedural arbitrability of the Grievance, the Court is cognizant that "procedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide," Wiley & Sons, 376 U.S. at 557-58, and that this Court can only vacate the Arbitrator's resolution of such questions if they were reached in bad faith or were "so gross as to amount to affirmative misconduct." United Paperworkers, 484 U.S. at 41. Given the inherent ambiguity of the language of the CBA regarding the trigger of the statute of limitations, and given the detailed

reading and close analysis of the Arbitrator's conclusion regarding both the facts surrounding the Grievance and the language of the CBA, this Court cannot find either bad faith or affirmative misconduct on the part of the Arbitrator. Further, the Arbitrator's construal of the relevant trigger being "within ten days after the request of either party" not only "draws its essence from the collective bargaining agreement," but is a quotation from it. The Court thus finds no ground to vacate this finding in the Arbitrator's June 15, 2010 Award.

2. Timeliness under Section 27(f)

Under Section 27(f), "[a] discharged employee must notify his/her Local Union in writing within two (2) working days of his/her desire to appeal the discharge." Arbitrator Franckiewicz also found Grievant Holland's Grievance procedurally arbitrable with respect to this provision. Since the Arbitrator found that the provision governs the employee-Union relationship rather than the Union-Employer relationship, he found that the provision did not require providing notice to the Employer and was not placed there "for the Employer's protection." (June 15, 2010 Arbitration Opinion at 11). Further, the Arbitrator did not find language in Section 27(f) which placed an employee's notification to the Union as "a condition to the Union's right to pursue a grievance. The right to pursue a case to arbitration, as Section 27(a) makes clear, is the Union's and not the employee's." (Id.). Since the CBA is only between the Union and the Employer, it is the Union that "has the power to police its contract for its own institutional reasons even if an affected employee has no desire to pursue his own case," and "[i]f a discharged employee fails to notify the Union within two days, it is a breach of the employee's duty to the Union," not to the Employer. (Id.). The Arbitrator further stated that "while the union presumably could refuse to process the grievance on the basis of the employee's breach of

his obligation to the Union, the Employer has no corresponding claim of breach of any duty to it." (Id.).

In Respondent's Motion to Vacate the Arbitration Awards, Respondent argues that the plain meaning of Section 27(f) required Grievant Holland to notify the Union in writing within two working days of his desire to appeal his discharge, and since he did not notify them by May 9, 2009 but rather by May 15, 2009, eight days after his May 7, 2009 termination, he failed to comply with the terms of the CBA. However, it does not constitute affirmative misconduct of the Arbitrator to interpret what the procedural requirements for proceeding to arbitration are based on the requirements made exclusive to the parties of the contract: the Union and the Employer. Therefore, since Grievant Holland was not himself a party to the CBA, his failure to comply with a notification requirement could only impact the procedural requirements indirectly, either through a breach on the part of the Employer or a breach on the part of the Union. This Court finds that the Arbitrator's construal of Section 27(f) as locating the intent of the provision on regulating the employee-Union relationship rather than the employee-Employer relationship is sufficiently drawn from the essence of the CBA since the only parties mentioned are the employee and the Union. No further provision is included which specifies the result of a failure to notify either on the Union's ability to proceed to arbitration or on the Employer's ability to do so. The Arbitrator's award is entitled to a high presumption of correctness, and this Court does not find evidence of bad faith or affirmative misconduct in his construal of this Section of the CBA, therefore the Court affirms the Arbitrator's finding with respect to procedural arbitrability under Section 27(f) in his June 15, 2010 Award.

**b. Substantive Arbitrability of the Grievance**

Whether Grievant Holland was a probationary employee under Section 23 of the CBA at all times relevant to this action was determinative of whether the grievance in the instant action was substantively arbitrable.  Section 23 provides:

> It is expressly understood that all employees are considered probationary for their first ninety (90) calendar days of employment and may be discharged at the sole determination of the Company and shall have no recourse to the Grievance or Arbitration Procedures. The Union shall not intervene in any discharge of a probationary period employee, but if the employee is retained for ninety (90) days, he/she shall be fully covered by this contract and his/her seniority shall be as of his/her original date of hire.

On this issue, Arbitrator Franckiewicz received evidence, duly considered said evidence, and provided a well-reasoned interpretation of the relevant section in his June 15, 2010 Arbitration Opinion.  The Section clearly states that probationary employees have no recourse to the Grievance and Arbitration Procedures, and clearly defines the probationary period as ninety days. The issue before the Arbitrator therefore was the time from which the ninety-day period begins. The terms of the CBA specify that employees are considered probationary "for their first ninety (90) calendar days **of employment**" (emphasis added).  The Arbitrator interpreted the plain meaning of that language as running the probationary period "from the date the employee was hired, rather than the ["]entered into["] or effective date of the collective bargaining agreement." (June 15, 2010 Arbitration Opinion at 13).   The Arbitrator did not have the power under Section 27(a) to read additional terms into the agreement, and since the "section says 'employment' and not 'employment under the terms of this contract,'" the Arbitrator therefore found that the 90-day probationary period ran from the date of hire.  Grievant Holland had been hired by Respondent more than five years prior to his discharge, and thus had more than 90 days of employment, exempting him from "probationary" status as an employee. (Id. at 14).

Respondent's disagreement with the Arbitrator's interpretation rests on two claims. First, that the probationary period began when the CBA became effective, on February17, 2009, and that because Grievant Holland was on layoff before the CBA was signed on February 20, 2009, he was not an employee of the Company. Thus, Respondent argues, Grievant Holland was a "straight probationary employee under the CBA and the terms of the contract govern his situation." (Resp't's Cross-Mot. to Vacate at 23). Second, Respondent argues that it reasonably relied on the Union's representation that Grievant Holland was a probationary employee and could be terminated for any reason during his first ninety days of employment. (Id. at 25). Respondent therefore argues that it relied on the Union's representation and terminated Grievant Holland, and claim the Union should not thereafter be allowed to reverse course.

Respondent presented these arguments to the Arbitrator during the arbitration hearing and again in its post-hearing brief. Further, Respondent does not argue that the Arbitrator refused to hear evidence pertinent and material to the controversy, or that he engaged in other misbehavior with respect to the arbitration beyond his alleged misconstrual of the terms of the agreement. Whether Grievant Holland was an employee at the entry of the CBA was a factual issue duly considered by the Arbitrator. Given the lack of evidence or argument regarding any faulty submission or review of evidence for factual determinations, this Court defers to the Arbitrator.

Respondent's arguments regarding its own construal of when the probationary period runs and its "reasonable reliance" on the Union's representation of Grievant Holland's status are not sufficient to meet the requisite high burden warranting vacatur of the Arbitration Award. This Court therefore cannot overrule the Arbitrator's decision on the merits based on offering its own interpretation of the relevant contract over that interpretation of the Arbitrator. This Court

does not find that the Arbitrator ignored the plain language of Section 23 regarding the running

of the 90-day period. His interpretation of the relevant phrase focused entirely on the language

agreed to by the parties in the CBA ("the first ninety (90) days of employment"). His adherence

to the limitations of the Arbitrator's authority under Section 27(a) justified his refusal to add

terms to the CBA to determine an alternative point from the date of employment regarding which

the probationary period ran. In addition, the Respondent's "reasonable reliance" on the Union

regarding the probationary status of the Grievant was a matter reviewed by the Arbitrator, and

through his assessment of the facts as presented in the arbitration hearings, the Respondent's

reliance on the Business Agent's statements regarding the Grievant's status "was soon overruled

by his superior, Local Secretary-Treasurer Bohan, and the revised Union position was promptly

communicated to the Company." (June 15, 2010 Arbitration Opinion at 14). Also, the Arbitrator

found that, based on the record, Knorr had made his decision regarding Grievant Holland's

termination regardless of the Business Agent's imprimatur. (Id.) Since the CBA neither

specifies the confirming agent of an employee's status nor the mechanism for determining the

status of an employee outside of arbitration itself, the Arbitrator did not make a fundamental

error of contract construction in rejecting Respondent's reasonable reliance argument and

allowing the later Union confirmation of Grievant's status as non-probationary by a more

authoritative Union representative to stand. Respondent's decision-making process regarding the

termination, as well as the sources on which that process relied, as a factual matter based on the

record, is a process about which the Court will again defer to the Arbitrator. Therefore, since

Respondent has failed to demonstrate a manifest disregard for the law based on Arbitrator

Franckiewicz's full awareness of the existence of a clearly defined governing legal principle

15

which he refused to apply, the Court finds that Respondent has failed to meet its burden for

vacatur of the Arbitration Award.

## IV.  CONCLUSION

For the foregoing reasons, Petitioner's Motion to Confirm the Arbitration Award is

**GRANTED** and Respondent's Motion to Vacate the Arbitration Awards is **DENIED.**

DATED: September 19, 2011

Jose L. Linares
United States District Judge

16